UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Carlos Melendez,

       *Plaintiff*,                                  **MEMORANDUM & ORDER**
  v.                                              03-CV-1029 (NGG) (LB)

DeVry Corp.,                                     **NOT FOR PUBLICATION**

       *Defendant*.

-----------------------------------------------------------X

GARAUFIS, United States District Judge.

In this action, Carlos Melendez ("Plaintiff") brings pro se a disability discrimination suit against DeVry Inc. ("DeVry" or "Defendant"), which was misidentified in the caption as DeVry Corp., alleging that DeVry discriminated against the Plaintiff on the basis of his blindness. The Plaintiff seeks $150 million in money damages.

At this time, the court considers DeVry's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Defendant's motion is granted and the Plaintiff's action is dismissed with prejudice.

**I.    Summary Judgment Standard**

Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In deciding a motion for summary judgment, the court must construe the facts in the light most favorable to the non-moving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), and all reasonable inferences and

ambiguities must be resolved against the non-moving party. Flanigan v. Gen. Elec. Co., 242 F.3d 78, 83 (2nd Cir. 2001). Where there are no such genuine issues of fact, and all facts, inferences, and ambiguities are construed in favor of the non-moving party, summary judgment for the moving party is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Mack v. Otis Elevator Co., 326 F.3d 116, 119-20 (2d Cir. 2003) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). Furthermore, "[i]t is well settled that pro se litigants generally are entitled to a liberal construction of their pleadings, which should be read 'to raise the strongest arguments that they suggest.'" Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (citing Graham v. Henderson, 89 F.3d 75, 79 (2d Cir.1996)). However, "a plaintiff's pro se status does not allow him to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment." Almonte v. Florio, 2004 WL 60306, at *3 n.10 (S.D.N.Y. Jan. 13, 2004).

As an initial matter, in opposing DeVry's motion for summary judgment, the Plaintiff has failed to comply with the requirements of Rule 56 of the Federal and Local Rules of Civil Procedure. DeVry properly submitted a Rule 56.1 Statement of Facts ("Def.'s 56.1 Stmt."), as is required by this court's Local Rules, and several affidavits of persons with personal knowledge with exhibits of admissible evidence attached, as is required by Fed. R. Civ. P. 56(e). The Plaintiff submitted in opposition the following: (1) a notarized Affidavit stating only that the Defendant's motion for summary judgment should be denied because of "malic [sic] and disregard for federal law under Section 504 of American with Disabilities Act" (Pl.'s Aff.); a notarized letter from Plaintiff to the court apologizing for the delay in filing his opposition papers and again expressing that "I feel and the documents will show that DeVry in acted [sic] with malice and total disregard for the federal laws that entity which received federal funding

must adhere to" (Pl.'s Letter dated June 27, 2005); and several pieces of documentary evidence submitted in support of his position.

Although I am entitled under Local Rule 56.1(c) to deem admitted all facts set forth in Defendant's 56.1 Statement, because the Plaintiff is pro se I will not do so. See Burke v. Royal Ins. Co., 39 F.Supp.2d 251, 257 (E.D.N.Y. 1999) (addressing the merits of a defendant's motion for summary judgment against a pro se plaintiff "in light of the entire record before the Court," despite plaintiff's failure to submit a Local Civil Rule 56.1 statement "or to present factual material in evidentiary form."); see also, Olle v. Columbia Univ., 332 F.Supp.2d 599, 603 (S.D.N.Y. 2004) ("In light of her pro se status, [Plaintiff's] failure to submit a Local Civil Rule 56.1 statement is not fatal to her opposition here."). Rather I will consider the entire record before the court,[1] glean the material facts therefrom, and decide the motion based on those facts, which will be interpreted in the light most favorable to the Plaintiff.

## II. Facts

The following facts are not in dispute. In December 2000, the Plaintiff, who is blind, applied for admission to DeVry's Computer Information Systems Program at the school's Long Island City, New York campus, to begin studies in the Spring 2001 semester. (Am. Compl. ¶ 4; Plaintiff's Deposition ("Pl.'s Dep.") at 12-13; Declaration of Nireata Seals ("Seals Decl.") ¶ 4

---

[1] DeVry also puts forth two additional arguments to limit the facts and evidence to be considered on this motion. (See Def.'s Reply Memorandum at 3-5). DeVry argues that certain of the documents the Plaintiff submitted in opposition cannot be considered on this motion because (1) the Plaintiff failed to turn them over to the defense during the protracted discovery period; and (2) the Plaintiff has failed to authenticate certain documents. Although there may be merit to these arguments, I find that I need not rule on these issues for the purposes of deciding this motion. The challenged evidence submitted by the Plaintiff does not support his position and does not raise any material issues of fact. Thus, to the extent that I have considered the documents, that consideration has had no adverse impact to the Defendant's position.

and Ex A). On December 11, 2000, the Plaintiff submitted a written request to take the school's placement tests under special conditions. (Seals Decl. ¶ 5 and Ex. B). On the Special Accommodations Request form, the Plaintiff described his disability as being "legally blind to the fullest extent" and he specifically requested an accommodation "[f]or placement testing only" as opposed to seeking accommodations for testing *and* classes. (Seals Decl. Ex. B). In response to the request, DeVry provided the Plaintiff with an audio recording of the placement test, headphones to listen to the cassette, and an employee of DeVry to write down his answers. (Pl.'s Dep. at 15-16). In late February 2001, during registration for the Spring semester, the Plaintiff met with Nireata Seals, who was then Dean of Student Services and responsible for all ADA accommodation requests. (Seals Decl. ¶¶ 7, 12; Pl.'s Dep. at 16-17). At that February meeting, the Plaintiff informed Seals that he would be contacting an organization called Vocational and Educational Services for Individuals with Disabilities (VESID), which conducts tests to determine appropriate accommodations for disabled students. (Seals Decl. ¶ 13; Pl.'s Dep. at 16-17).

At this point in the factual chronology, there arises some dispute concerning the substance of meetings between Seals and the Plaintiff that occurred on or about February 20, 2001 and on or about March 12, 2001. Seals attests that at the February meeting, the Plaintiff stated that he did not need the school to provide him with books on tape because he would obtain them from the Commission for the Blind. (Seals Decl. ¶ 11). The Plaintiff stated at his deposition that he applied to the Commission for the Blind, (Pl.'s Dep. at 16-17), but did not testify concerning whether or not he informed Seals of a need for books on tape. Seals further affirms that she met with Plaintiff in March 2001 during the first week of classes and that

4

Plaintiff told her that DeVry need not purchase special computer equipment for him because he was using the equipment at LaGuardia Community College located across the street. (Seals Decl. ¶ 12). Seals asserts that although the Plaintiff requested no accommodations at this meeting, she nonetheless informed him that DeVry would purchase specialized computer equipment for his use. (Id. and Ex. F).

Although the Plaintiff testified that he did not recall meeting with Seals in March nor discussing with her DeVry's plan to purchase computer programs, this factual dispute is not material given the proof submitted by Defendant of DeVry's subsequent purchase of computer equipment. Seals researched available computer programs to assist blind persons and determined that purchase of a program called Kurzweil, a software program that reads aloud the contents of documents that are scanned into the computer, would be appropriate. On March 28, 2001, DeVry purchased the Kurzweil program and license at a cost of $5,620.00. (Seals Decl. ¶ 14, 16; Seals Decl. Ex. E (receipt); Seals Decl. Ex. F (March 29, 2001 letter to Plaintiff informing him of purchase)). When the Kurzweil software arrived several days later, Michael Sanchez, a computer lab technician employed by DeVry, began assisting the Plaintiff with his use of the software. (Seals Decl. ¶ 23; Declaration of Michael Sanchez ("Sanchez Decl.") ¶ 4). Sanchez attests that he first met and began working with the Plaintiff in April 2001, at which time he spent several hours initially teaching himself how to use the software so that he could provide assistance to the Plaintiff. (Sanchez Decl. ¶ 7). Sanchez conducted tutorial sessions with the Plaintiff on how to use the Kurzweill program. (Pl. Dep. at 19-20).

At some point, the Plaintiff became frustrated with the Kurzweil program and the manner in which it interacted with the internet; he requested that DeVry purchase a different program

5

known as Job Access Word Speech (JAWS). (Pl.'s Dep. at 18; Sanchez Decl. at 7-8). JAWS also enables a blind student to scan documents and have their contents read back by the computer. After Plaintiff requested JAWS, in early May 2001, Sanchez downloaded a trial version from the internet at a cost of $48.66 to determine if it met the Plaintiff's needs. (Sanchez Decl. ¶9; Seals Decl. ¶ and Ex. G). On July 19, 2001 DeVry spent $974.25 to purchase an extended license to continue use of JAWS. (Sanchez Decl. ¶9; Seals Decl. ¶ 23 and Ex. H). Sanchez attests that he attempted to train the Plaintiff in how to use JAWS but that Plaintiff "did not invest the time and effort required to learn [the program's functions]." (Sanchez Decl. ¶ 11). Plaintiff admitted that Sanchez provided training to him. (Pl. Dep. at 19).

DeVry technicians also installed the Kurzweill and JAWS programs on computers located in the Academic Support Center and the Library, respectively, as well as in the main computer lab. (Declation of Rousseau Messidor ("Messidor Decl.") ¶ 4; Sanchez Decl. ¶ 14). A minimum of three computer technicians were trained to assist the Plaintiff in using JAWS and to troubleshoot any technical problems. (Messidor Decl. ¶ 10).

In July 2001, the Plaintiff requested and was provided a laptop computer with Kurzweil and JAWS installed to be used for in-class and at-home use. (Pl.'s Dep. at 24-5; Sanchez Decl. ¶15; Messidor Decl. ¶ 6). In September of that year, the Plaintiff informed the Academic Technology Support Manager at DeVry that he had dropped and broken the laptop that the school has provided to him, and it was promptly replaced by the Information Technology Department with a new computer installed with the Plaintiff's special software. (Messidor Decl. ¶ 7). Once the Plaintiff received the laptop computer, Defendant claims that, for the most part, he ceased using the computer labs at DeVry and ceased taking advantage of the technical

assistance DeVry made available to him.  (Id. ¶ 8; Sanchez Decl. ¶16).

The only possible material factual dispute in this case is the issue of whether DeVry reasonably accommodated the Plaintiff's requests for books on tape.  Seals attests that the Plaintiff did not request books on tape during his first semester and that she was never made aware by any professor that the Plaintiff lacked class textbooks.  (Seals Decl. ¶ 25).  Seals also asserts that Plaintiff was able to make a request to the Academic Support Center that books he needed for class be recorded onto tape, but the Center needed to be given notification one semester in advance.  (Seals Decl. ¶ 26).  At his deposition, the Plaintiff was asked whether he was told that he would be able to drop off printed material to have it scanned or recorded, and he answered, no.  (Pl.'s Dep. at 37-8).  However, Sanchez confirms that the Plaintiff initially scanned documents into the programs himself but ultimately insisted that DeVry employees do it for him, which they did.  (Sanchez Decl. ¶ 12).  Additionally, the Plaintiff had special permission to tape record all of his classes.  (Seals Decl. ¶ 28; Pl.'s Dep. at 36).  His examinations were read aloud to him in the Testing Center and he was given time and a half to complete his exams.  (Seals Decl. ¶ 29; Pl.'s Dep. at 37).  DeVry also purchased, at the Plaintiff's request in May 2001, magnetic letters and numbers for the Plaintiff's use with magnetic letter boards located in the Academic Support Center.  (Seals Decl. ¶ 30).  In July or August 2001, DeVry provided Plaintiff with additional magnetic letters and numbers.  (Pl.'s Dep. at 31).  In December 2001, DeVry paid $300.00 to join Recording for the Blind and Dyslexic so that DeVry could order books on tapes for the Plaintiff's use.  (Seals Decl. ¶ 31 and Ex. I).  On or about January 9, 2002, two textbooks on tape were ordered for the Plaintiff.  (Id. ¶ 32).

There is also evidence in the record of a meeting that occurred on February 22, 2002

7

between the Plaintiff and Lili Rodriguez, who was then the Associate Dean of Student Services ("ADSS"). This meeting was tape recorded by the Plaintiff, and the cassette recording is in evidence. The United States Department of Education Office of Civil Rights ("OCR") summarized the recorded meetings as part of an investigation of DeVry it conducted as a result of the Plaintiff's complaint of discrimination. (See File Memos of Geraldo Perez and Marilyn Eisenbraum, annexed to Plaintiff's Opposition Papers).[2] The tape reveals the following: the Plaintiff arrived at the meeting with the ADSS after receiving phone calls from the ADSS and the President of DeVry asking him to communicate with them about complaints he had addressed to the President about accommodations he was not receiving. The Plaintiff asked the ADSS if she had been the person he had spoken with in July of 2001, when notes were taken on the accommodations that the Plaintiff required. The ADSS stated that she was that person. The Plaintiff admitted that he had been told at that meeting that all requests for accommodations needed to be in writing. The ADSS asked the Plaintiff what accommodation requests he had made that had not been fulfilled. The Plaintiff answered that he did not understand the question because he thought books on tape had been discussed at the July 2001 meeting and yet he had not received a book on tape in the three semesters he'd been at DeVry. The ADSS then attempted to confirm the Plaintiff's statement, and said: "so you are telling me that for the past

---

[2] As an aside, the Plaintiff annexed to his Affidavit/Affirmation in Opposition to Defendant's Motion for Summary Judgement copies of several of the file memos written by OCR in connection with its investigation of DeVry. These memoranda do not raise triable issues of fact that would overcome the Defendant's summary judgment motion. In addition, the Plaintiff has annexed to his Affidavit a decision of the Department of Education in a Student Financial Assistance Proceeding concerning a DeVry student (presumably not the Plaintiff as the decision predates his admission to DeVry by four years) for which DeVry was found to have improperly waived the Selective Service Registration Requirement. This document has no relevance to this case.

8

year and a half you have not received any books. . . ." At that point, the meeting ended.

On November 27, 2001, the Plaintiff was notified that he had been placed on academic probation because his grade point average had fallen below 2.0. (Seals Decl. ¶ 36 and Ex. K). The Plaintiff was subsequently notified by letter dated February 28, 2002 of his dismissal from DeVry for failure to make satisfactory academic progress. (See Seals Decl. Ex. L).

At DeVry, class attendance is tracked by a swipe card machine located in each classroom. (Seals Decl. ¶ 33). When the machine fails to work, students sign a sign-in sheet. Plaintiff attested that he would have a classmate sign him in at times when the machine was not working. (Pl.'s Dep. at 27-9). Faculty are also required to manually record attendance. (Seals Decl. ¶ 33; Pl.'s Dep. 27-29).

The record reflects that in the three semesters the Plaintiff attended DeVry, he received several poor and failing grades, as well as some impressive grades. In the Spring 2001 semester, he took Computer Application for Business, which he failed. (See Pl.'s Dep. at 21). After the Plaintiff received the failing grade, the Professor agreed to meet with him to help him make up missed work, but his grade was never changed. (Id. at 21-22). Also in the Spring of 2001, the Plaintiff received an A in Critical Thinking and Problem Solving; a B in an English Composition class; and an A in Introduction to Business Technology. (Id. at 23-24). According to DeVry's records, during the Summer 2001 semester the Plaintiff received a grade of D in his Public Speaking class; he missed 9.3 out of the 15 classes. (Pl.'s Dep. at 25; Seals Decl. ¶ 34). He received a C in an Architecture and Operating Systems class, and a B in an Advanced Composition English class. (Pl.'s Dep. at 26, Seals Decl. Ex. J). In a finite math class, the Plaintiff received an F. (Seals Decl. Ex. J; Pl.'s Dep. at 25-26; Declaration of Safaa Al-Shiraida

9

("Al-Shiraida Decl.") ¶ 3). The math Professor attests that the Plaintiff missed 7 out of 13 scheduled classes that semester, as well as several tests, quizzes and homework assignments. (Al-Shiraida Decl. ¶¶ 4,5 and Ex. A).

In Fall 2001, the Plaintiff received a grade of D in his Principles of Management Class, for which he missed 7 out of 15 classes. He Missed 7 out of 15 Intermediate Algebra classes and received an F in the class. (See Seals Decl. ¶ 34 and Ex. J; Pl.'s Dep. at 32-3). In the Algebra class, the Plaintiff was notified in May of 2001 that he was in danger of failing. After he did fail, a DeVry Professor, and Chair of the Math and Science Department, offered to tutor the Plaintiff and to give him the opportunity to raise his grade to a C. (Pl.'s Dep. at 22-23; Declaration of Sorin Cruceru ("Cruceru Decl.") ¶ 3). During January and February 2002, as recorded in the Academic Support Center Appointment Book, the Plaintiff attended three out of six scheduled tutoring sessions. (Cruceru Decl. ¶ 4 and Ex. A). The Testing Center records also indicate that the Plaintiff never took two examinations for this math class that were available to be read to him in the Academic Support Center. (Id. ¶ 5 and Ex. A). The Plaintiff's failing grade in this math class was never changed. (Pl.'s Dep. at 22-23; Cruceru Decl. Ex. B). In the Fall 2001 semester, the Plaintiff also received a C in a Psychology course and an A in a professional writing course. (Id. at 33-34).

When the Plaintiff was made aware of his dismissal from DeVry in February 2002, he was also notified of the procedures for requesting reinstatement. (Seals Decl. ¶ 37 and Ex. L). The Plaintiff never requested reinstatement. (Pl.'s Dep. at 40).

While enrolled as a student at DeVry, the Plaintiff borrowed a total of $8,198.00 in student loans to fund his education. (Seals Decl. ¶ 42 and Ex. Q). He also received a Title IV

refund in the amount of $2,158.39. (Seals Decl. ¶ 42 and Ex. Q). The only out-of-pocket expense paid by the Plaintiff to DeVry was a $75.00 registration fee. (Pl.'s Dep. at 43-44; Seals Decl. ¶42 and Ex. Q). After the Plaintiff left DeVry, he transferred eighteen credits from DeVry to Monroe College. (Pl.'s Dep. at 44; Seals Decl. ¶ 43 and Ex. R; see also Monroe College Transcript annexed to Pl.'s Opposition Papers). In 2001, tuition at DeVry cost $365.00 per credit. (Seals Decl. ¶ 43).

In March of 2002, the Plaintiff filed a complaint with the United States Department of Education, Office for Civil Rights against DeVry alleging disability discrimination. (See Seals Decl. ¶ 38 and Ex. M; Am. Compl. ¶ 17). After investigating the claims, OCR issued a "Resolution Letter" concluding that there was insufficient evidence to support the Plaintiff's claims that DeVry failed to "provide him with the tactile symbols he needed for class" . . . or "with proper training or instruction in the use of the JAWS program." (Seals Decl. Ex. N). With respect to the Plaintiff's claim that DeVry did not provide him with books on tape, OCR made no finding. DeVry executed a Resolution Agreement to address this allegation. DeVry agreed to offer the Plaintiff readmission to DeVry, to allow him to retake classes which he had failed at no additional cost during the 2002-2003 school year, to provide all class materials to him for those courses in an acceptable format, and to replace his failing grades with grades earned. (See Seals Decl. Ex. N). According to the terms of the agreement, OCR was to monitor implementation of the plan, and OCR maintained that if DeVry failed to implement the terms OCR would "immediately resume investigation" of the Plaintiff's complaint. (See id.).

By letter dated September 16, 2002, DeVry formally offered the Plaintiff readmission free of charge in accordance with the terms of the Resolution Agreement. (Seals Decl. ¶ 40 and

11

Ex. O). The Plaintiff never took never took advantage of this offer. (Seals Decl. ¶ 40). On April 28, 2004, OCR officially completed its monitoring of DeVry's Resolution Agreement, finding that DeVry had complied fully with its terms. (Seals Decl. ¶ 41 and Ex. P).

On May 15, 2003, the Plaintiff filed a pro se Amended Complaint against DeVry alleging failure to reasonably accommodate his disability as a blind person in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504") and/or Section III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182 ("the ADA"). (See generally Am. Compl.). The Plaintiff alleges that DeVry failed to provide him reasonable accommodations requested, i.e. "books on tape, speech program for computer, [and] instruction on computer usage." (Am. Compl. ¶ 8).

### III.    Discussion

For the reasons explained more fully below, I find that there are no genuine issues of fact in existence, and, construing all facts, inferences, and ambiguities in favor of the plaintiff summary judgment for the Defendant is appropriate because "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Mack v. Otis Elevator Co., 326 F.3d 116, 119-20 (2d Cir. 2003) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "[M]ere conclusory allegations . . . are not evidence and cannot by themselves create a genuine issue of material fact." Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995); Lama v. Consolidated Edison, 2000 WL 1804510, **1 (2d Cir. Dec. 7, 2000) ("[B]ecause [pro se plaintiff's] claims of disability discrimination were wholly conclusory, summary judgment was properly granted in the district court.) (citing Fletcher, 68 F.3d at 1456). Plaintiff's claims are unsupported, and indeed even contradicted by the record, and DeVry is

entitled to judgment as a matter of law.

### A.   Standard for Liability under Section 504 and the ADA

For discrimination suits brought either under Section 504 or the ADA, the "substantive standards for determining liability are the same." Bravin v. Mt. Sinai Med. Ctr., 186 F.R.D. 293, 304 (S.D.N.Y. 1999); see also 29 U.S.C. 794(d) (Rehabilitation Act is to be interpreted in accordance with the standards applied under the ADA). "In order to establish a prima facie case under the ADA and Rehabilitation Act, a plaintiff must show that, 'with reasonable accommodation,' she could perform the essential functions of the job." Kennedy v. Dresser Rand Co., 193 F.3d 120, 121 (2d Cir. 1999) (quoting Stone v. City of Mount Vernon, 118 F.3d 92, 96-97 (2d Cir. 1997), cert. denied, 522 U.S. 1112 (1998)).[3] The issue before the court therefore is whether DeVry reasonably accommodated the Plaintiff's disability, and if so, whether the Plaintiff was otherwise qualified to be a student at DeVry.

### B.   The Record Establishes that DeVry Made Reasonable Accommodations

As the Second Circuit has explained, in an accommodation claim "[s]ummary judgment is [ ] appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide, or when the [defendant] offers an accommodation that is plainly reasonable." Gronne v Apple Bank For Sav., 1 Fed.Appx. 64, 66-7 (2d Cir. 2001) (internal quotation and citations omitted). In the present case, the Plaintiff alleges that he was not provided textbooks on tape. He provides no evidence, however, on summary judgment to raise a triable issue of fact on this allegation. The Defendant, on the other hand, has provided evidence

---

[3] It is undisputed that the Plaintiff is disabled by means of his blindness and that DeVry is an educational institution that receives federal funding, both of which are also elements of the prima facie case. See Rothschild v. Grottenthaler, 907 F.2d 286, 290 (2d Cir. 1990).

which establishes that DeVry offered accommodations that were "plainly reasonable," including purchase of books on tape, computer software and other devices, modified testing conditions, training of employees for academic assistance, provision of laptop computers, auxiliary tutoring sessions, and ultimately readmission into the school free of charge. Moreover, with specific reference to the requested accommodation of books on tape, DeVry has submitted affidavits which attest to the fact that this accommodation was not specifically requested by the Plaintiff but nonetheless offered to him by DeVry, and indeed utilized by him to a certain extent. (See Seals Decl. ¶¶ 11, 25, 26, 32; Sanchez Decl. ¶ 12).

Section 504 and the ADA do not require that the Defendant "provide every accommodation the disabled [plaintiff] may request, so long as the accommodation provided is reasonable." Fink v. New York City Dept. of Personnel, 53 F.3d 565, 567 (2d Cir. 1995) (affirming summary judgment in favor of defendant when visually disabled plaintiffs were provided reasonable accommodation of tape recording of examination, tape recorder, reader assistant and additional time to take exam). DeVry has "demonstrated without contradiction that [it] made reasonable accommodation[s]," and summary judgment is therefore proper. Id.; see also Spychalsky v. Sullivan, 2003 WL 22071602, *35 (E.D.N.Y. Aug. 29, 2003) (granting summary judgment in favor of defendant law school when disabled plaintiff "failed to proffer any facts that would allow a reasonable trier of fact to conclude that [defendant] failed to reasonably accommodate him . . . [when the] undisputed facts show that he was immediately granted some accommodations and ultimately granted all of the testing accommodations that he requested."). Based on the record before this court on Defendant's motion for summary judgment, I conclude that no rational fact-finder could conclude that DeVry failed to reasonably

accommodate the plaintiff, and as such, the Defendant is entitled to judgment as a matter of law.

    **C.    Plaintiff Cannot Make out a <u>Prima</u> <u>Facie</u> Case**

The Plaintiff's claim also fails because he cannot establish that he was "otherwise qualified"to be a student at DeVry. In other words, he has failed to establish any genuine issue of material fact which would support a finding that he is capable of performing the essential functions of being a student at DeVry. A "qualified individual with a disability" under the ADA or Section 504, is one who:

> *with or without* reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision or auxiliary aids and services, meets the *essential eligibility requirements* for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2) (emphasis added).

The Plaintiff was dismissed from DeVry's academic program, not because of his blindness, but because – with reasonable accommodation – he failed to meet essential requirements of DeVry's academic program by repeatedly missing classes and failing to earn a grade point average ("GPA") above 2.0. "Section 504 imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person." <u>Southeastern Community College v. Davis</u>, 442 U.S. 397, 413 (1979). The Plaintiff's apparent inability to attend class regularly is akin to a disabled employee who sues under Section 504 or the ADA but does not regularly go to work. Such plaintiffs have consistently been held not to qualify for Section 504 or ADA protection. Put simply, "[a]n individual is not qualified for his position if he is unable to come to work." <u>Mazza v. Bratton</u>, 108 F.Supp.2d 167, 175 (E.D.N.Y. 2000); <u>see</u> <u>also</u> <u>Robarge v. Potter</u>, 2002 WL

32061800, *6 (E.D.N.Y. March 14, 2002) ("Plaintiff cannot satisfy the third prong of the prima facie case, which requires that a plaintiff show that with or without a reasonable accommodation, the plaintiff could perform the essential functions of the position. . . . [B]ecause Plaintiff could not meet his obligations as [an]employee by maintaining adequate attendance, he cannot show that he could perform the essential functions of the position.") (internal quotation and citation omitted).

The Plaintiff's conduct in not attending class and not completing assignments and examinations is analogous to an employee who fails to show up for work. The Plaintiff, even with the many reasonable accommodations provided and offered to him, was not able to meet the academic standards set by DeVry. The record establishes that the Plaintiff repeatedly missed classes, tutoring sessions, and exams, and this conduct led to his failing grades, inability to maintain the required GPA, and ultimate dismissal from DeVry.

Given that the Plaintiff could not meet the essential eligibility requirements of the program – even with reasonable accommodations – he cannot be deemed a qualified individual entitled to the protections of Section 504 or the ADA. Therefore, the Plaintiff has failed to make out a prima facie case and his action must fail. See Garcia v. State Univ. of New York Health Sciences Ctr. at Brooklyn, 2000 WL 1469551, *8-11 (Aug. 21, 2000 E.D.N.Y.) (Raggi, J.) (granting summary judgment in favor of defendant medical school where Plaintiff failed to show that he was otherwise qualified to be a student).

**D.     Plaintiff's Claim Fails Because he is not Entitled to Damages**

Even assuming arguendo that the Plaintiff could establish that he was a qualified individual under the ADA/Section 504, and that he had adequate support for the allegation that

16

DeVry failed to reasonably accommodate him, his suit would nonetheless fail because he is not entitled to damages.

### i. Title III of the ADA does not entitle private plaintiffs to damages

The Plaintiff seeks only monetary damages in this case. (See Am. Compl. ¶ 24). The available remedies under Title III of the ADA are those which are available under 42 U.S.C. § 2000(a)(3)(a). See 42 U.S.C. § 12188(a)(1) ("The remedies and procedures set forth in section 2000a-3(a) of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis of disability in violation of this subchapter. . . "); see also Spychalsky, 2003 WL 22071602 at *5. Under 42 U.S.C. 2000(a)(3)(a), damages are not available to private plaintiffs. Id. (citing Newman v. Piggy Park Enter., Inc., 390 U.S. 400, 401-2 (1968)). Therefore, the Plaintiff is not entitled to damages under the ADA. Spychalsky, 2003 WL 22071602 at * 5; see also Cole v. Natl. Collegiate Athletic Ass'n., 120 F.Supp.2d 1060, 1072 (N.D.Ga. 2000) ("Plaintiffs' demand for monetary and punitive damages is improper because the only claims asserted arise under Title III of the ADA and no such damages are available thereunder. The remedy for violation of Title III of the ADA is limited to injunctive relief.") (internal citations omitted). As no relief can be granted by this court, summary judgment is proper against Plaintiff on his ADA claims.

### ii. The Plaintiff is not entitled to damages under Section 504

A private plaintiff can recover monetary damages under Section 504. Freydel v. New York Hosp., 242 F.3d 36, 2000 WL 1836755, **2 (2d Cir. Dec. 13, 2000) ("It is settled in this circuit that a plaintiff aggrieved by a violation of [Section 504] may seek Title VI remedies, which include damages); see also Bartlett v. New York State Bd. of Law Examiners, 156 F.3d

321, 331 (2d Cir.1998), vacated on other grounds, 527 U.S. 1031 (1999); Butler v. South Glens Falls Cent. Sch. Dist., 106 F.Supp.2d 414, 420 (N.D.N.Y. 2000). However, to succeed on a Section 504 claim for damages, the Plaintiff must demonstrate intentional discrimination on the part of the Defendant. Butler, 106 F.Supp.2d at 420. "The plaintiff is not required to show personal animosity or ill will. Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." Id. (citing Bartlett, 156 F.3d at 331) (internal quotations and citations omitted).

In the present case, the Plaintiff has failed to establish that DeVry intentionally discriminated against him. Indeed, the record completely belies such a finding as it plainly establishes that DeVry put a great deal of effort into accommodating the Plaintiff's needs. DeVry purchased software and other manipulatives to assist with his studies; trained computer support staff to provide technical assistance; and provided the Plaintiff with two laptop computers, with assistance in scanning necessary documents and texts, with test-taking accommodations, and with personal tutoring sessions. From these actions, no rational trier of fact could infer that the Defendant acted with "deliberate indifference to the strong likelihood that a violation of federally protected rights" would result. Butler, 106 F.Supp.2d at 420. To the contrary, the record shows without dispute that the Defendant acted with deliberate concern *not* to violate the Plaintiff's federally protected rights.

As there can be no finding of intentional discrimination, the Plaintiff's claim for damages under Section 504 must fail and DeVry's motion for summary judgment is granted.

**IV.    Conclusion**

For the reasons stated above, DeVry's motion for summary judgment is GRANTED. The Plaintiff's claim seeking money damages on the grounds of disability discrimination is dismissed with prejudice. The clerk is directed to close the case.


SO ORDERED.

Dated: November 29, 2005                                    /s/
       Brooklyn, N.Y.                                  NICHOLAS S. GARAUFIS
                                                                            United States District Judge